**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL BLANCO,<br><br>                              Plaintiff,<br><br>v.<br><br>GREGORY J. DUNCAN, MD; et al.,<br><br>                              Defendants. | Case No.: 15-cv-00407-H (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; and**<br><br>[Doc. Nos. 104, 120, 149.]<br><br>**(2) SUA SPONTE DISMISSING DEFENDANT WILLIAMS** |

      On October 13, 2016, Defendant Gregory J. Duncan filed a motion for summary judgment. (Doc. No. 104.) On December 8, 2016, Defendants Cheryl Malo-Clines, Barbara Fellows, Lansdale J. Peters, Bondoc, Jonathon E. Akanno, Goyal, and P. Karan also filed a motion for summary judgment. (Doc. No. 120.) On March 21, 2017, Defendant M. Dhah also filed a motion for summary judgment. (Doc. No. 149.) Plaintiff filed oppositions to the respective motions for summary judgment. (Doc. Nos. 140, 143, 156.) Defendants filed replies. (Doc. Nos. 141, 148, 157.) The Court has taken the matters under submission, and the Court has provided Plaintiff with notice pursuant to Rand v. Rowland,

154 F.3d 952 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) as to each of the motions for summary judgment. (Doc. Nos. 108, 133, 153.) For the reasons below, the Court grants Defendants' motions for summary judgment.

## Background

On May 18, 2005, while playing football at Pelican Bay State Prison, Plaintiff injured his left shoulder. (Doc. No. 104-2, Peabody Decl. Ex. A.) That same day, Plaintiff was brought to the emergency room at Sutter Coast Hospital and was seen by Dr. Larry R. Schatz. (Id.) Dr. Schatz diagnosed Plaintiff as having a left shoulder dislocation and suffering a Bankart lesion,[1] and noted that Plaintiff may require surgery in the future. (Id.)

Shortly thereafter, Plaintiff was seen by Dr. Gregory J. Duncan on May 25, 2005 and June 8, 2005. (Doc. No. 104-2, Peabody Decl. Exs. B-C.) During the visits, Dr. Duncan examined Plaintiff's shoulder, reviewed x-rays, and diagnosed Plaintiff as suffering a left shoulder dislocation. (Id. Ex. B) Dr. Duncan recommended that Plaintiff's shoulder be immobilized for 3-4 weeks and that Plaintiff begin physical therapy after about 2 weeks. (Id.)

After Plaintiff suffered further dislocations of his shoulder and was evaluated by other practitioners, Plaintiff was again seen by Dr. Duncan on November 15, 2006. (Doc. No. 104-2, Peabody Decl. Ex. G.) Dr. Duncan recommended performing surgery on the shoulder, and Plaintiff consented to the surgery. (Id.) Dr. Duncan performed the surgery, a left shoulder capsular shift procedure, on February 20, 2007. (Id. Ex. I.) There were no reported complications. (Id.) Plaintiff was seen by Dr. Duncan on March 7, 2007 and May 2, 2007 for postoperative visits. (Id. Exs. J, K.) At the second visit, Dr. Duncan noted that Plaintiff was doing very well with no further episodes of instability and that his range of motion was improving. (Id. Ex. K.) Plaintiff was subsequently seen by two other

---

[1] "A Bankhart lesion is a tear in the labrum glenoidale of the shoulder joint." Dettmer v. Astrue, No. 4:10-CV-1329 CEJ, 2011 WL 3904429, at *5 (E.D. Mo. Sept. 6, 2011); accord Shanda v. Colvin, No. CIV. 14-1838 MJD/JSM, 2015 WL 4077511, at *12 (D. Minn. July 6, 2015) ("A Bankart tear is a type of tear in the labrum.").

practitioners on May 16, 2007 and June 19, 2007 and reported experiencing no pain. (Id. Exs. L, M.) Despite this, Plaintiff contends that the capsular shift procedure that Duncan performed may have failed and that his labrum was reinjured a few days later. (Doc. No. 140 at 1.)

Following the surgery, Plaintiff began to complain of pain again in his left shoulder and was given pain medication by various practitioners over a period of several years. (Doc. No. 104-2, Peabody Decl. Exs. N-W; Doc. No. 12, FAC ¶¶ 8-14, Ex. A at 22-66.) Plaintiff contends that the medications these Defendants prescribed were ineffective and did not alleviate his pain. (Doc. No. 143 at 4-8; Doc. No. 156 at 2.)

Eventually, on January 9, 2014, Plaintiff was seen by an Orthopedist, Dr. Roman B. Cham, who ordered an MRI. (Doc. No. 104-2, Peabody Decl. Ex. Y.) Following his MRI, Plaintiff was seen again by Dr. Cham on April 10, 2014. (Id. Ex. X.) Dr. Cham noted that the interpretation of the MRI was a tear of the anterior inferior glenoid labrum and recommended surgery to repair Plaintiff's labrum and Plaintiff consented. (Id.) Dr. Cham performed the surgery on January 14, 2015. (Id. Exs. Z, AA.) Plaintiff asserts that the surgery Dr. Cham performed substantially alleviated his pain.[2] (Doc. No. 140 at 3; Doc. No. 143 at 10; Doc. No. 156 at 3.)

On February 18, 2015, Plaintiff filed a complaint against Defendants, alleging that the Defendants failed to provide Plaintiff with adequate medical care in violation of his constitutional rights. (Doc. No. 1.) Plaintiff also filed a motion to proceed *in forma pauperis*. (Doc. No. 3.) On May 29, 2015, the Court granted Plaintiff's IFP motion, declined to screen Plaintiff's complaint, and ordered the U.S. Marshal Service to effect service of the complaint. (Doc. No. 6.)

On July 26, 2015, Plaintiff filed a first amended complaint against Defendants Gregory J. Duncan M.D., Barbara Fellows, RN, Cheryl Malo-Clines, FNP, Claire

---

[2] Although Plaintiff states that the 2015 surgery significantly reduced his pain, he also asserts that he still experiences pain and his shoulder remains loose and at risk for possible dislocation. (Doc. No. 156 at 3.)

3

Williams, M.D., Linda Rowe, M.D., Lansdale J. Peters, PA-C, Jonathon E. Akanno, M.D., P. Karan, M.D., Goyal PTS, Dhah, NP, and Bondoc, NP, alleging causes of action pursuant to 42 U.S.C. § 1983 for: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment; (2) violation of the due process clause of the Fourteenth Amendment;[3] (3) failure to provide adequate medical care in violation of the Eighth Amendment; (4) failure to provide adequate medical care resulting in emotional distress in violation of the Eighth Amendment;[4] and (5) a claim that Defendants are not entitled to qualified immunity. (Doc. No. 12, FAC.) Shortly thereafter, Defendants Duncan, Dhah, Malo-Clines, Fellows, Peters, Bondoc, Akanno, and Karan filed motions to dismiss Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 14, 16, 35.) On January 15, 2016, the Court issued an order granting in part and denying in part Defendants' motions to dismiss. (Doc. No. 37.) In the order, the Court dismissed with prejudice Plaintiff's fifth cause of action of no qualified immunity, and declined to dismiss the remainder of the claims in the FAC.[5] (Id. at 13-14.) The

---

[3] Plaintiff's second cause of action is alleged against only Defendants Rowe and Goyal. (FAC ¶ 61.)

[4] The Court notes that in his motion for summary judgment, Defendant Dhah construes Plaintiff's fourth cause of action as a state law claim for intentional infliction of emotional distress. (See Doc. No. 149-1 at 1, 14-15.) Defendant Dhah is incorrect. A review of Plaintiff's allegations in the FAC shows that Plaintiff cites to 42 U.S.C. § 1983 and the Eighth Amendment of the U.S. Constitution in support of this cause of action. (Doc. No. 12, FAC ¶¶ 85-87.) In addition, in support of the cause of action, Plaintiff cites to two cases, Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002), and Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000), which both involved the issue of whether a plaintiff can recover damages for mental and/or emotion injury for a constitutional violation. (Doc. No. 12, FAC ¶ 95.) Moreover, neither Plaintiff nor the other Defendants in the action have ever characterized this claim as a state law claim for intentional infliction of emotional distress, and the Court has previously referred to this claim as an Eighth Amendment claim in its prior orders. (See Doc. No. 37 at 4; Doc. No. 82 at 4.) Accordingly, Plaintiff's fourth cause of action is properly construed as a claim for failure to provide adequate medical care resulting in emotional distress in violation of the Eighth Amendment.

[5] In his motion for summary judgment, Defendant Dhah moves for summary judgment of Plaintiff's fifth cause of action of no qualified immunity. (Doc. No. 149-1 at 15-16.) Because the Court has already dismissed Plaintiff's fifth cause of action with prejudice, (Doc. No. 37 at 14), this aspect of Dhah's motion for summary judgment is moot.

Defendants subsequently filed answers to Plaintiff's first amended complaint. (Doc. Nos. 41, 42, 43.)

On July 21, 2016, after reviewing the sufficiency of Plaintiff's claims in the FAC against Defendant Rowe, the Court *sua sponte* dismissed Defendant Rowe from the action with prejudice pursuant to 28 U.S.C. § 1915(e)(2). (Doc. No. 82.) On October 11, 2016, the Court denied Plaintiff's motion for reconsideration of the Court's July 21, 2016 order dismissing Defendant Rowe with prejudice. (Doc. No. 103.) By the present motions, Defendants Duncan, Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Goyal, and Karan move for summary judgment of Plaintiff's remaining claims. (Doc. Nos. 104-1, 120-1, 149-1.)

**Discussion**

**I.   Legal Standard for a Motion for Summary Judgment**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the

nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Plaintiff's Eighth Amendment Claims

In the FAC, Plaintiff alleges claims for violation of the Eighth Amendment against all of the Defendants. (Doc. No. 12, FAC ¶¶ 48-59, 72-95.) Defendants Duncan, Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Goyal, and Karan move for summary judgment in their favor on Plaintiff's Eighth Amendment claims. (Doc. Nos. 104-1, 120-1, 149-1 at 5-14.)

### A. Legal Standards for Eight Amendment Claims Based on Prison Medical Care

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth

6

15-cv-00407-H (KSC)

Amendment violation cognizable under § 1983." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting Estelle v. Gamble, 429 U.S. 97, 103-05 (1976)). "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" Id.

"To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). "To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." Colwell, 763 F.3d at 1066. "Such a need exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" Id. To meet the subjective element of the standard, a plaintiff must demonstrate "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" Colwell, 763 F.3d at 1066.

"The deliberate indifference doctrine is limited in scope." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); see also Toguchi, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard."); Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002) ("This is not an easy test for Plaintiffs to satisfy."). Deliberate indifference "requires 'more than ordinary lack of due care.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994). "'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" Toguchi, 391 F.3d at 1057; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." (emphasis added)); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical

treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). Further, "'[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.'" Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014); see Toguchi, 391 F.3d at 1058 ("[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'").

B. Defendant Duncan

Plaintiff's medical records reflect that he was first seen by Defendant Duncan, an orthopedic surgeon, on May 25, 2005. (Doc. No. 104-2, Peabody Decl. Ex. B.) Dr. Duncan examined Plaintiff, reviewed x-rays, and assessed Plaintiff as suffering a left shoulder dislocation. (Id.) Dr. Duncan's prescribed plan was to immobilize the shoulder for three to four weeks, start physical therapy in two weeks, and for Plaintiff to return in two weeks for a follow up with repeat x-rays. (Id.)

Plaintiff was next seen by Dr. Duncan on June 8, 2005. (Doc. No. 104-2, Peabody Decl. Ex. C.) Dr. Duncan noted that x-rays of Plaintiff's left shoulder showed a slight irregularity that might represent a Hill-Sachs lesion. (Id.) Dr. Duncan advised Plaintiff on appropriate rehab exercises and to avoid any high stress activities for at least three more months. (Id.) Dr. Duncan also noted that a capsular repair may be necessary. (Id.)

Plaintiff was then seen by various practitioners for shoulder pain on February 14, 2006, March 24, 2006, and September 11, 2006. (Doc. No. 104-2, Peabody Decl. Exs. D-F.) On November 15, 2006, Plaintiff was again seen by Dr. Duncan. (Id. Ex. G.) After examining Plaintiff, Dr. Duncan recommended surgery for Plaintiff's shoulder and ordered repeat x-rays of Plaintiff's shoulder. (Id.) Plaintiff consented to the surgery. (Id.) The report for the x-rays stated that the impression from the four-view examination of Plaintiff's left shoulder was negative. (Id. Ex. H; see also Doc. No. 104-3, Fronek Decl. ¶ 17.)

On February 20, 2007, Dr. Duncan performed a left shoulder capsular shift

procedure on Plaintiff. (Doc. No. 104-2, Peabody Decl. Ex. I.) There were no reported complications. (See id.; Doc. No. 104-3, Fronek Decl. ¶ 18.) On March 7, 2007, Plaintiff was seen by Dr. Duncan for a postoperative visit, and Dr. Duncan ordered physical therapy. (Doc. No. 104-2, Peabody Decl. Ex. J.) On May 2, 2007, Plaintiff was seen by Dr. Duncan for another postoperative visit. (Id. Ex. K.) At that visit, Dr. Duncan noted that Plaintiff was doing very well with no further episodes of instability and that his range of motion was improving. (Id.)

Plaintiff was subsequently seen by other practitioners on May 16, 2007 and June 19, 2007 and reported experiencing no pain. (Id. Exs. L, M.) On November 13, 2007, Plaintiff reported pain again in his left shoulder. (Id. Ex. N.) Plaintiff does not dispute the above facts.[6] (See Doc. No. 140 at 10-15.)

Even when viewing the evidence in the light most favorable to Plaintiff, the evidence in the record is insufficient, as a matter of law, to support an Eighth Amendment claim for deliberate indifference against Defendant Duncan. There is no evidence in the record showing that Defendant Duncan ignored or failed to respond to Plaintiff's medical needs or delayed Plaintiff's treatment. The undisputed evidence shows that Defendant Duncan saw Plaintiff multiple times for his shoulder and provided Plaintiff with medical care and treatment, including performing surgery on his shoulder in February 2007. (Doc. No. 104-2, Peabody Decl. Exs. B, C.) Further, Defendant Duncan has provided the Court with a declaration from a medical expert, Dr. Fronek, opining that Defendant Duncan's course of treatment complied with the appropriate standard of care for orthopedic surgeons, specifically opining that Dr. Duncan's examination, impressions and recommendations for a capsular shift procedure were appropriate and that the procedure addressed the pathology in Plaintiff's shoulder. (Doc. No. 104-3, Fronek Decl. ¶¶ 33-42.) In his opposition brief,

---

[6] The Court notes that Plaintiff disputes whether Dr. Duncan ordered specialized x-rays. (Doc. No. 140 at 11.) But this dispute is immaterial. Plaintiff concedes that Dr. Duncan ordered x-rays on November 15, 2006 and that those x-rays were interpreted as normal. (Id.) Whether those x-rays were "specialized" does not materially affect the Court's analysis of Plaintiff's claims.

Plaintiff states that he does not contradict Dr. Fronek's opinions regarding the capsular shift procedure. (Doc. No. 140 at 1.) Accordingly, Plaintiff's claims for deliberate indifference against Defendant Duncan fail as a matter of law. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (explaining that to prevail on a claim for deliberate indifference, the plaintiff must show that "that the course of treatment the doctors chose was medically unacceptable under the circumstances").

Plaintiff argues that there is a possibility that the capsular shift procedure that Dr. Duncan performed failed and that his labrum was reinjured a few days later. (Doc. No. 140 at 1.) Plaintiff further speculates that a capsular shift procedure might not have been the most effective surgical option for his injury. (Id. at 2.) Even assuming this is true, this does not constitute deliberate indifference. That the capsular shift procedure might not have been successful in fully treating Plaintiff's injury, would at best only constitute mere negligence in treating Plaintiff's medical condition, which is insufficient, as a matter of law, to constitute deliberate indifference. See Estelle, 429 U.S. at 105-06 ("[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Toguchi, 391 F.3d at 1057 ("'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'").

Further, Plaintiff's speculation that there might have been a better surgical option for his injury, is also insufficient, as a matter of law, to support a claim for deliberate indifference. A difference of opinion between a physician and a prisoner "'concerning what medical care is appropriate does not amount to deliberate indifference.'" Colwell, 763 F.3d at 1068. The evidence in the record shows that a capsular shift procedure was an appropriate medical option for Plaintiff's injury. (Doc. No. 104-3, Fronek Decl. ¶¶ 35-37.)

And Plaintiff does not dispute this opinion evidence. (Doc. No. 140 at 1.) Thus, even assuming a different surgical option was available to address Plaintiff's injury, Dr. Duncan's medical decision to choose the capsular shift procedure, a medically appropriate procedure, cannot as a matter of law constitute deliberate indifference. See Jackson, 90 F.3d at 332 (explaining that to prevail on a claim for deliberate indifference, the plaintiff must show that "that the course of treatment the doctors chose was medically unacceptable under the circumstances").

Plaintiff further argues that Defendant Duncan failed to properly diagnosis his Hill-Sachs lesion. (Doc. No. 140 at 2, 5, 7.) Specifically, Plaintiff argues that Defendant Duncan should have ordered an MRI, instead of only ordering x-rays, because Hill-Sachs lesions are hard to detect through x-rays. (Id. at 2, 5.) But "Plaintiff's belief that he should have received a MRI is no more than a difference of opinions between plaintiff and the defendant[] who provided and/or reviewed his medical treatment. Such a mere difference of opinion as to the proper course of treatment does not give rise to an Eighth Amendment claim." Vaught v. Miranda, No. CIV S-10-1108 DAD P, 2012 WL 525573, at *11 (E.D. Cal. Feb. 16, 2012); see Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Defendant Duncan's decision not to order an MRI is supported by the medical expert opinion in the record that given Plaintiff's history, physical complaints, and the results of his x-rays, an MRI was not warranted at the time he was seen by Duncan. (Doc. No. 104-3, Fronek Decl. ¶ 35.)

Further, the evidence in the record shows that Defendant Duncan did evaluate Plaintiff for a Hill-Sachs lesion. Plaintiff's medical records reflect that in June 8, 2005, Dr. Duncan identified a possible early Hill-Sachs lesion based on limited x-rays. (Doc. No. 104-2, Peabody Decl. Ex. C; see also Doc. No. 104-3, Fronek Decl. ¶ 13.) Later, Dr. Duncan ordered further x-rays, but the report for the x-rays stated that the impression from the four-view examination of Plaintiff's left shoulder was negative. (Doc. No. 104-2, Peabody Decl. Exs. G, H.) Even assuming Dr. Duncan was incorrect in diagnosing

Plaintiff's injury, any such error would at most be mere negligence in diagnosing a medical condition, which is insufficient to establish deliberate indifference. See Estelle, 429 U.S. at 105-06; Toguchi, 391 F.3d at 1057. Moreover, there is no evidence in the record showing that an MRI would have revealed Plaintiff's Hill-Sachs lesion. Even when Plaintiff obtained an MRI from Dr. Cham, Dr. Cham's notes state that the interpretation of the MRI was "a tear of the anterior inferior glenoid labrum" or "a Bankart lesion." (Doc. No. 104-2, Peabody Decl. Exs. X, Z.) There is no mention of a Hill-Sachs lesion. (See id.)

Finally, Plaintiff notes that the procedure Dr. Cham performed in 2015 substantially alleviated his pain. (Doc. No. 140 at 3.) But even accepting this as true and drawing all reasonable inferences in Plaintiff's favor, the fact that Dr. Cham might have been more successful than Defendant Duncan in treating Plaintiff's injury, at best, would only mean that the Defendant Duncan was potentially negligent in his diagnosis or treatment of Plaintiff's injury. This is insufficient, as a matter of law, to state a claim for violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1057; Estelle, 429 U.S. at 106. Accordingly, Defendant Duncan is entitled to summary judgment in his favor on Plaintiff's Eighth Amendment claims. See Graham ex rel. Estate of Graham v. Cty. of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) ("'[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'").

C.  Defendants Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Karan, and Goyal

Plaintiff's medical records reflect that both before and after his 2007 surgery, he was seen at various times by Defendants Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Karan, and Goyal for shoulder pain. (Doc. No. 104-2, Peabody Decl. Exs. D-E; Doc. No. 12, FAC Ex. A at 9-11, 14-17, 22, 40-55, 57-60; Doc. No. 149-7, Sargizian Decl. Exs. F, G, H at 6; Doc. No. 120-4, Song Decl. ¶¶ 5-34; Doc. No. 149-4, Newman Decl. ¶¶ 14-15,

18, 25-30.) The medical records reflect that in each instance, Plaintiff reported that he was experiencing shoulder pain, the Defendant at issue evaluated and examined Plaintiff, and the Defendant then recommended a course of treatment and prescribed Plaintiff pain medication.[7] (See id.) If Plaintiff reported that a particular pain medication failed to alleviate his pain, then the Defendant at issue would prescribe a different pain medication. (See, e.g., Doc. No. 149-7, Sargizian Decl. Ex. G; Doc. No. 12, FAC Ex. A at 40-43.) Plaintiff does not dispute the accuracy of these medical records. (See Doc. No. 143 at 16-19; Doc. No. 156 at 8-9.)

Even when viewing the evidence in the light most favorable to Plaintiff, the evidence in the record is insufficient, as a matter of law, to support an Eighth Amendment claim for deliberate indifference against Defendants Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Karan, or Goyal. There is no evidence in the record showing that any of these Defendants ignored or failed to respond to Plaintiff's medical needs or delayed Plaintiff's treatment. The undisputed evidence shows that when each of these Defendants saw Plaintiff, the Defendant evaluated Plaintiff's condition, recommended a course of treatment, and prescribed Plaintiff medication in an attempt to alleviate his pain. Further, these Defendants have provided the Court with declarations and reports from medical experts opining that each Defendant's course of treatment was medically appropriate under the circumstances. (Doc. No. 120-4, Song Decl. ¶¶ 5-34; Doc. No. 149-4, Newman Decl. ¶ 35, Ex. 2.) Accordingly, Plaintiff's claims for deliberate indifference against these Defendants fail as a matter of law. See Jackson, 90 F.3d at 332 (explaining that to prevail on a claim for deliberate indifference, the plaintiff must show that "that the course of treatment the doctors chose was medically unacceptable under the circumstances").

Plaintiff argues that the medications these Defendants prescribed were ineffective and did not alleviate his pain. (Doc. No. 143 at 4-8; Doc. No. 156 at 2.) But, even accepting

---

[7] In addition, Defendants Akanno and Karan ordered additional imaging, specifically x-rays, of Plaintiff's shoulder. (Doc. No. 12, FAC Ex. A at 51, 54-55, 58; Doc. No. 120-4, Song Decl. ¶ 21.)

13

as true that all of the medications were ineffective at treating Plaintiff's pain, this at best would only constitute mere negligence in treating Plaintiff's medical condition, which is insufficient, as a matter of law, to constitute deliberate indifference. See Estelle, 429 U.S. at 105-06 ("[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Toguchi, 391 F.3d at 1057 ("'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'"). There is no evidence in the record showing that any of these Defendants would have known beforehand that the medicine prescribed would be ineffective in treating Plaintiff's symptoms. Indeed, the evidence in the record reflects that when Plaintiff reported that certain medications were ineffective, the Defendant at issue would then alter Plaintiff's prescription. (See, e.g., Doc. No. 149-7, Sargizian Decl. Ex. G; Doc. No. 12, FAC Ex. A at 40-43.) Thus, the Defendants were responsive, rather than indifferent, to Plaintiff's medical issues.

Plaintiff also argues that the Defendants failed to properly diagnose his Hill-Sachs lesion. (Doc. No. 143 at 10-11; Doc. No. 156 at 1-2.) Even assuming these Defendants failed to properly diagnose his injury, mere negligence in diagnosing a medical condition does not, as a matter of law, constitute deliberate indifference. See Estelle, 429 U.S. at 105-06; Toguchi, 391 F.3d at 1057.

Plaintiff also argues that these Defendants should have ordered an MRI and referred him to an orthopedist. (Doc. No. 156 at 2.) But Plaintiff's disagreement with a Defendant's chosen course of treatment does not amount to deliberate indifference as a matter of law.[8]

---

[8] The Court notes that Plaintiff contends that these Defendants refused to refer Plaintiff for an MRI or to an orthopedist due to financial considerations. (Doc. No. 143 at 9; Doc. No. 156 at 6.) But Plaintiff fails to support this contention with any evidence in the record.

14

15-cv-00407-H (KSC)

See Colwell, 763 F.3d at 1068 ("'A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.'"); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("At most, [plaintiff] has raised a difference of medical opinion regarding his treatment. A difference of opinion does not amount to a deliberate indifference to [plaintiff's] serious medical needs."); see also Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Further, there is no evidence in the record showing that an MRI would have revealed Plaintiff's Hill-Sachs lesion. Even when Plaintiff obtained an MRI from Dr. Cham, Dr. Cham's notes state that the interpretation of the MRI was "a tear of the anterior inferior glenoid labrum" or "a Bankart lesion." (Doc. No. 104-2, Peabody Decl. Exs. X, Z.) There is no mention of a Hill-Sachs lesion. (See id.)

Finally, Plaintiff notes that he was eventually seen by Dr. Kornbleuth, who referred Plaintiff to see an orthopedist for his shoulder pain. (Doc. No. 143 at 10; Doc. No. 156 at 6.) But even accepting this as true, the fact that Dr. Kornbleuth, unlike the above Defendants, referred Plaintiff to an orthopedist is, at best, a difference of medical opinion, which is insufficient to constitute deliberate indifference.[9] See Sanchez, 891 F.2d at 242; Colwell, 763 F.3d at 1068. Plaintiff also notes that after Dr. Cham ordered an MRI for his shoulder and subsequently performed surgery on him in 2015, his pain was significantly reduced. (Doc. No. 143 at 10; Doc. No. 156 at 3.) But even accepting this as true and drawing all reasonable inferences in Plaintiff's favor, the fact that Dr. Cham was more successful than these Defendants in treating Plaintiff's injury, at best, would only mean that the Defendants were potentially negligent in their diagnosis and/or treatment of

---

[9] The Court notes that this particular argument is inapplicable to Defendants Malo-Clines, Fellows and Goyal because, as Plaintiff concedes in the FAC, Malo-Clines and Goyal did refer Plaintiff to an orthopedist, and the medical records reflect that Defendant Fellows did refer Plaintiff to see a doctor. (Doc. No. 12, FAC ¶¶ 7, 21, Ex. A at 11, 22, 59.) Further, in his opposition, Plaintiff explains that he is not alleging a claim for deliberate indifference against Defendant Goyal. (Doc. No. 143 at 8.)

Plaintiff's injury. This is insufficient, as a matter of law, to state a claim for violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1057; Estelle, 429 U.S. at 106. Accordingly, Defendants Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Karan, and Goyal are entitled to summary judgment in their favor on Plaintiff's Eighth Amendment claims. See Sanchez, 891 F.2d at 241-42 (affirming a district court's entry of summary judgment in favor of the defendants where the plaintiff was seen by "a physician's assistant, prison doctors, and outside physicians on numerous occasions" and "received substantial treatment and medication for his ailments" although the plaintiff's symptoms continued to recur); see also Graham, 358 F.3d at 385 ("'[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'").

### D   Defendant Williams

In the FAC, Plaintiff also alleges Eighth Amendment claims against Defendant Williams, but she has not appeared in the action. Nevertheless, the Court notes that it may review the sufficiency of Plaintiff's allegations against Defendant Williams pursuant to 28 U.S.C. § 1915(e)(2), which provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relief may be granted."

A complaint is sufficient if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).

In determining whether a plaintiff has adequately stated a claim for relief, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.</u>, 768 F.3d 938, 945 (9th Cir. 2014). But, a court need not accept "legal conclusions" as true. <u>Iqbal</u>, 556 U.S. at 678. Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

In the FAC, the only allegations related to Defendant Williams are that Plaintiff was seen by Defendant Williams for shoulder pain on December 18, 2007. (Doc. No. 12, FAC ¶ 8.) The medical records referenced in the FAC and attached as exhibits to the FAC show that Plaintiff saw Defendant Williams on December 18, 2007 and reported pain in his shoulder when he would sleep on that side and when he would work out.[10] (<u>Id.</u> Ex. A at 27-28.) The records reflect that Defendant Williams evaluated Plaintiff, instructed him to stop performing exercises which caused him pain "(push ups)", changed Plaintiff's prescription from Naprosyn to Ibuprofen 800 mg, and instructed Plaintiff to follow up if his symptoms persisted. (<u>Id.</u>)

Even accepting these allegations as true and construing them in the light most favorable to Plaintiff, these allegations are insufficient to state an Eighth Amendment claim for deliberate indifference against Defendant Williams. The medical records attached to the FAC reflect that Defendant Williams responded to Plaintiff's complaints of shoulder pain and attempted to treat his pain by instructing him to refrain from certain exercises and by altering his pain medication prescription. Plaintiff may allege that the pain medication

---

[10] In determining whether a plaintiff has adequately stated a claim for relief, a court may consider documents attached to the complaint. <u>See</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003); <u>Courthouse News Serv. v. Planet</u>, 750 F.3d 776, 780 n.4 (9th Cir. 2014).

Defendant Williams prescribed was ultimately ineffective, (Doc. No. 12, FAC ¶ 8), but, even accepting this as true, it would at best only constitute mere negligence in treating Plaintiff's medical condition, which is insufficient to state a claim for deliberate indifference. See Estelle, 429 U.S. at 105-06; Toguchi, 391 F.3d at 1057. Accordingly, the Court dismisses Defendant Williams from the action with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

### III. Plaintiff's Fourteenth Amendment Claims

In the FAC, Plaintiff alleges a claim for violation of the Due Process Clause of the Fourteenth Amendment against Defendants Rowe and Goyal. (Doc. No. 12, FAC ¶¶ 60-71.) On July 21, 2016, the Court *sua sponte* dismissed Defendant Rowe from the action with prejudice pursuant to 28 U.S.C. § 1915(e)(2). (Doc. No. 82.) In his opposition, Plaintiff explains that he named Defendant Rowe as a defendant to this cause of action by accident and that he instead meant to allege this cause of action against Defendant Karan. Defendants argue that they are entitled to summary judgment of this claim because it is premised on state law. (Doc. No. 120-1 at 16-17.)

Plaintiff's medical records reflect that on July 29, 2013, Defendant Karan prescribed Plaintiff ibuprofen and oxcarbazepine for his pain, and on October 15, 2013, Defendant Goyal prescribed Plaintiff nortriptyline for his pain. (Doc. No. 12, FAC Ex. A at 57-62.) Plaintiff argues that in prescribing these medications, Defendants failed to provide him with notice that these medications were antipsychotic drugs as required by California Penal Code § 2602. (Doc. No. 143 at 3, 7-8, 13; see also Doc. No. 12, FAC ¶ 61.) But "Section 1983 requires [a plaintiff] to demonstrate a violation of federal law, not state law." Galen v. Cty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). Thus, Plaintiff cannot establish a violation of the due process clause by simply attempting to show that Defendants Karen and Goyal failed to comply with California Penal Code § 2602.[11] See id.; Ove v. Gwinn,

---

[11] In his opposition, Plaintiff argues that the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over his state law claim for violation of California Penal Code § 2602. (Doc. No. 143 at 13.) But there is no claim for violation of California Penal Code § 2602 in the FAC, the operative pleading. (See

18

15-cv-00407-H (KSC)

264 F.3d 817, 824 (9th Cir. 2001).

Plaintiff argues that the Supreme Court has recognized that there is a liberty interest in freedom from unwanted antipsychotic drugs. (Doc. No. 143 at 11 (quoting United States v. Williams, 356 F.3d 1045, 1053 (9th Cir. 2004)).) The Supreme Court and the Ninth Circuit have recognized that "[b]oth convicted prisoners and pretrial detainees 'possess[ ] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.'" Williams, 356 F.3d at 1053 (quoting Washington v. Harper, 494 U.S. 210, 221-22 (1990)). Thus, the Due Process Clause will permit a State to treat "'a prison inmate who has a serious mental illness with antipsychotic drugs against his will'" only if "'the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.'" United States v. Loughner, 672 F.3d 731, 746 (9th Cir. 2012) (quoting Harper, 494 U.S. at 227); accord United States v. Hernandez-Vasquez, 513 F.3d 908, 912 (9th Cir. 2008).

But there is no evidence in the record showing that Plaintiff was ever given antipsychotic drugs against his will. Even assuming that oxcarbazepine and nortriptyline qualify as antipsychotic drugs, there is no evidence showing that Plaintiff was forcibly given these medications. The evidence in the record merely shows that Defendants Karan and Goyal prescribed the medications at issue, not that they ordered that the medication be forcibly administered. (See Doc. No. 12, FAC Ex. A at 57-62.) Indeed, in his briefing, Plaintiff states that he began refusing the oxcarbazepine. (Doc. No. 143 at 7; see also Doc. No. 12, FAC ¶ 40, Ex. B at 6-7, Ex. E at 25.) Accordingly, Defendants Goyal and Karan

---

generally Doc. No. 12, FAC.) Moreover, even assuming Plaintiff had pled such a state law cause of action in the FAC, because the Court has either dismissed or granted summary judgment on all of Plaintiff's federal claims in this action, see infra, the Court would decline to exercise supplemental jurisdiction over Plaintiff's claim for violation of California Penal Code § 2602 and dismiss that claim without prejudice. See Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1998) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."); Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1169 (9th Cir. 2002).

are entitled to summary judgment in their favor on Plaintiff's due process claims.

## Conclusion

For the reasons above, the Court grants Defendants Duncan, Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Goyal, and Karan's motions for summary judgment.[12] In addition, the Court dismisses Defendant Williams with prejudice pursuant to 28 U.S.C. § 1915(e)(2). Accordingly, the Court has resolved all of Plaintiff's claims against all of the Defendants. The Clerk is directed to enter a judgment in favor of Defendants and against Plaintiff and close the case.

**IT IS SO ORDERED.**

DATED: June 2, 2017

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[12] In their motions for summary judgment, Defendants Malo-Clines, Fellows, Dhah, Peters, Bondoc, Akanno, Goyal, and Karan also move for summary judgment of Plaintiff's claims on the grounds that the claims are barred as a matter of law by the applicable statute of limitations. (Doc. No. 120-1 at 13-16; Doc. No. 149-1 at 5-8.) In addition, Defendants Malo-Clines, Fellows, Peters, Bondoc, Akanno, Goyal, and Karan also move for summary judgment on the grounds that they are entitled to qualified immunity. (Doc. No. 120-1 at 17-22.) Because the Court holds that these Defendants are entitled to summary judgment because Plaintiff's constitutional claims fail as a matter of law on the merits, the Court declines to address these additional grounds for summary judgment.